**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ruben TAREN–PALMA, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ismael CALDERON–PEREZ,
Defendant–Appellant.**

**Nos. 92–10085, 92–10110.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1993.

Decided June 10, 1993.

526

Jared O. Smith, Tempe, AZ, Craig Mehrens, Mehrens & Pearce, Phoenix, AZ, for defendants-appellants.

Peter Jarosz, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: FARRIS, POOLE, and WIGGINS, Circuit Judges.

## PER CURIAM:

Ruben Taren–Palma appeals his conviction and sentence for conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii). Ismael Calderon–Perez appeals his conviction and sentence for conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii), and for unlawfully carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

### FACTS

On August 2, 1991, Drug Enforcement Administration Special Agent Yvonne Kaminski and Detective Larry Flick of the Phoenix Police Department, acting on information received from a confidential informant, Pat Seely, met with Taren–Palma and Seely at Taren–Palma's apartment in Phoenix, Arizona, to negotiate a cocaine purchase. Seely had met with Taren–Palma on July 31, 1991 and told Taren–Palma about out-of-state friends interested in purchasing ten kilograms of cocaine. Kaminski and Flick were operating undercover and posing as those friends. At the meeting, Kaminski and Flick told Taren–Palma that they were from Omaha, Nebraska and were in Phoenix that day to get a sample of the ten kilograms.

Taren–Palma showed Kaminski and Flick a quarter kilogram package of cocaine and opened it for their inspection. Kaminski and Flick offered to purchase: 1) two ounces immediately, and 2) ten to twelve kilograms later. Taren–Palma, along with two associates, sold Kaminski and Flick the two ounces for $1,500.00.

Kaminski and Flick told Taren–Palma that they would return to Phoenix next Thursday, but would call him the prior Monday to arrange their next purchase and would only consummate the purchase if they could obtain at least ten kilograms. Taren–Palma said he could produce that amount on three days notice and agreed to produce at least ten kilograms at $18,000 per kilogram. Kaminski and Flick tape recorded this meeting, and the tape was admitted at trial.

On August 8, 1991, Seely, Flick and Taren–Palma met at Seely's apartment in Phoenix to consummate the cocaine sale. As promised, Taren–Palma was taken from the apartment and shown the $180,000 Flick had brought to purchase the ten kilograms. The three then went back to Seely's apartment. Taren–Palma told Seely, and Flick that it would take approximately 30 minutes to arrange for the delivery of the cocaine. Later that afternoon, Taren–Palma contacted Seely to notify him that the delivery had arrived.

Flick and Seely then went to Seely's apartment to meet Taren–Palma. Flick saw Taren–Palma and Calderon–Perez, who was unknown to Seely and Flick, sitting in front of the apartment. Taren–Palma said that he and Calderon–Perez had been let in the apartment by the manager and that the cocaine was already inside. The four then

entered the apartment, and Flick retrieved a bag containing only two kilograms of cocaine. Taren–Palma told Flick that the rest of the cocaine was not far away and that, if Flick gave him the money, it would be delivered. As Flick simulated testing the cocaine in front of Taren–Palma and Calderon–Perez, Taren–Palma and Calderon–Perez had a conversation in Spanish. Taren–Palma then told Flick that "he wants you to try it." Flick was wearing a recording device during this meeting, and certain parts of the conversation were recorded. At trial, Flick was able to identify Taren–Palma and Calderon–Perez's voices on the tape.

Flick left the apartment, telling Taren–Palma that he would only bring back $36,000 for the two kilograms. Taren–Palma and Calderon–Perez were then arrested by Phoenix Police officers. A loaded and cocked .38 caliber handgun was found concealed in the back of Calderon–Perez's pants upon his arrest.

### DISCUSSION

### I. TAREN–PALMA

#### A. *Multiple Conspiracies Instruction*

 Taren–Palma argues that the district court erred in refusing to give a jury instruction concerning multiple conspiracies. We review the district court's determination whether there was a factual basis for giving an instruction for an abuse of discretion and review related issues of law *de novo. United States v. Gomez–Osorio,* 957 F.2d 636, 642 (9th Cir.1992). If the evidence indicates two or more conspiracies may exist, a multiple conspiracies instruction must be given. *United States v. Perry,* 550 F.2d 524, 533 (9th Cir.), *cert. denied,* 434 U.S. 827, 98 S.Ct. 104, 54 L.Ed.2d 85 (1977). However, "[a] trial court must instruct the jury on a defendant's theory of the case only if the evidence sufficiently supports the theory and the theory is supported by law." *United States v. Ravel,* 930 F.2d 721, 726 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991) (citations omitted).

 Taren–Palma argues that the potential existence of the following conspiracies required the district court to give a multiple conspiracies instruction: (1) a conspiracy among Taren–Palma and his two associates to sell two ounces of cocaine; (2) a conspiracy between Taren–Palma and unknown suppliers to sell ten kilograms of cocaine; and (3) a conspiracy between Taren–Palma and Calderon–Perez to sell the two kilograms of cocaine. Taren–Palma contends these three transactions were parts of separate conspiracies because the sales took place at different times with different people present and with no link shown among the participants.

 A mere change in participants and a lapse of time, without more, are insufficient to support a finding of multiple conspiracies. *See United States v. Castro,* 629 F.2d 456, 465 (7th Cir.1980). Every member of the conspiracy need not know every other member nor be aware of all acts committed in furtherance of the conspiracy. *See United States v. Camacho,* 528 F.2d 464, 469, 470 (9th Cir.), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976). Finding multiple conspiracies requires some evidence of separate agreements and purposes. *See United States v. Patterson,* 819 F.2d 1495, 1502 (9th Cir.1987). There is no evidence in this case that there was any purpose or agreement other than to sell ten kilograms of cocaine. The district court did not abuse its discretion in refusing Taren–Palma's proposed multiple conspiracies instruction.

#### B. *Jury Unanimity*

Taren–Palma argues that the district court erred in refusing to instruct the jury: 1) that the government must prove an overt act in furtherance of the conspiracy, and 2) on multiple conspiracies. Taren–Palma suggests that the court's failure to so instruct the jury created the possibility that the jurors convicted him based on different conspiracies rather than the same conspiracy.

 Proof of an overt act is necessary under 21 U.S.C. § 846. *See Martinez v. Borg,* 937 F.2d 422, 425 (9th Cir.1991). The district court failed to instruct the jury that proof of an overt act is necessary for conviction of a drug conspiracy under the statute. We must therefore determine whether the

error is harmless. *United States v. Baldwin,* 987 F.2d 1432, 1438 (9th Cir.1993) (citing *Carella v. California,* 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989)). The error is harmless if no rational jury could have made its findings without also finding the omitted or presumed fact to be true. *Martinez,* 937 F.2d at 425.

The jury was instructed that it had to find beyond a reasonable doubt that there was an agreement to distribute cocaine. There was no evidence showing an actual agreement. The jury could not have found Taren–Palma guilty of conspiracy under § 846 without inferring an agreement from the evidence presented at trial. *See United States v. Thomas,* 887 F.2d 1341, 1347–48 (9th Cir.1989) (holding that agreement may be inferred from the defendant's acts pursuant to the scheme, or other circumstantial evidence). The evidence showed that Taren–Palma: 1) attended meetings along with other members of the conspiracy and made telephone calls to set up a drug transaction; 2) provided samples of cocaine along with other members of the conspiracy in connection with setting up a drug transaction; and 3) provided cocaine along with other members of the conspiracy for the primary drug transaction.

The jury necessarily relied on one or more of these overt acts in finding there was an agreement. No rational jury could have convicted Taren–Palma without finding an overt act. The district court's instructional error was harmless beyond a reasonable doubt.

### C. Coercive Jury Instructions

Taren–Palma argues that the district court's jury instructions were impermissibly coercive. Taren–Palma did not object. We review for plain error. *United States v. Jerome,* 942 F.2d 1328, 1331 (9th Cir.1991).

The relevant instructions stated: "After you have reached a unanimous verdict, agreement on a verdict, your foreperson will fill out a form that will be given to you...." The court further cautioned the jury that "you are not to tell anyone, including me, how the jury stands, numerically or otherwise, on the question of guilt of the defendants until after you have reached a unanimous verdict and have been discharged." The court also instructed the jury that "[i]t is important that you attempt to reach a unanimous verdict, but only, of course, if each of you can do so after having made up your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict."

The instructions were proper. The jury was admonished not to reach a unanimous verdict if it could not do so in good conscience. There was no coercion.

### D. Expert Translation

Taren–Palma argues that the district court erred in allowing Officer Soto to testify regarding his translation of the conversations recorded by Flick. Taren–Palma did not object at trial. We review for plain error. *United States v. Gomez–Norena,* 908 F.2d 497, 500 (9th Cir.), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990).

The district court's admission of expert testimony is reviewed for an abuse of discretion. *United States v. Antone,* 981 F.2d 1059, 1062 (9th Cir.1992). The district court has wide discretion in determining whether expert testimony is sufficiently reliable. *United States v. Gwaltney,* 790 F.2d 1378, 1381–82 (9th Cir.1986), *cert. denied,* 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987). If specialized knowledge will assist the trier of fact in understanding the evidence, a witness qualified as an expert may testify in the form of an opinion or otherwise. Fed.R.Evid. 702.

Soto had the requisite skill in Spanish. Soto was certified in Spanish by the Phoenix Police Department and had translated more than 10,000 taped conversations from Spanish to English. He was involved in sixteen wiretap cases, mostly involving Spanish conversations. Soto had transcribed between two and three thousand conversations verbatim.

Taren–Palma's objections concerning Soto's lack of linguistics or grammatical expertise went to the weight of Soto's testimony rather than to its admissibility. *See Gwaltney,* 790 F.2d at 1382. The district court did not plainly err in admitting Soto's testimony.

■ Taren–Palma argues for the first time on appeal that the district court erred in allowing Soto to take the standard oath for witnesses and not the oath prescribed by Federal Rule of Evidence 604. We reject the argument. Rule 604 applies only to interpreters who translate the testimony of witnesses on the stand. Unlike those interpreters, Soto was a language expert who took the stand under oath, and subjected himself to cross-examination. Rule 604 is inapplicable.

### E. *Closing Argument*

■ Taren–Palma argues that the district court erred in refusing to allow his attorney to argue to the jury that the government, with the intent to increase the potential sentence, improperly charged him with conspiring to distribute ten, instead of two, kilograms of cocaine. We review the district court's rulings on the scope of argument for an abuse of discretion. *United States v. Guess*, 745 F.2d 1286, 1288 (9th Cir.1984), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1219, 84 L.Ed.2d 360 (1985).

Arguments must be based on the evidence at trial. *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990). The evidence showed Kaminski and Flick bargained for the delivery of ten kilograms of cocaine. No evidence was adduced at trial showing that Kaminski or Flick were aware of, or that there was a possibility of, increased punishment. Taren–Palma's theory that the government intended to obtain a higher sentence for Taren–Palma is without support in the record. The district court did not abuse its discretion in restricting Taren–Palma from making this argument.

### F. *Mistrial Based on Improper Opening Argument*

Taren–Palma argues that the district court erred in not granting a mistrial because counsel for Calderon–Perez referred to evidence not adduced at trial in his opening argument. We review for an abuse of discretion. *United States v. Marsh*, 894 F.2d 1035, 1040 (9th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1048 (1990).

■ Opening argument, like closing, should not refer to matters that are not to be presented as evidence. *See United States v. Monks*, 774 F.2d 945, 955 (9th Cir.1985). Calderon–Perez's counsel made the following remark in his opening argument: "On July 31 and before, the informant told the police that Mr. Taren–Palma was dealing with lots and lots of kilograms of cocaine, the informant had seen lots and lots of kilograms of cocaine." The court later ruled that the underlying evidence was inadmissible. The opening argument was therefore improper.

The district court's error, however, was harmless beyond a reasonable doubt. *See United States v. Hasting*, 461 U.S. 499, 507–08, 103 S.Ct. 1974, 1979–80, 76 L.Ed.2d 96 (1983); *United States v. Vargas–Rios*, 607 F.2d 831, 838 (9th Cir.1979). The other evidence at trial was overwhelming, the court gave a curative instruction, and the comment was an isolated one.

### G. *Sentencing Finding*

Taren–Palma contends that the district court erred in finding, for purposes of sentencing, that he was able to produce ten kilograms of cocaine. We review this factual finding for clear error. 18 U.S.C. § 3742(d); *United States v. Uzelac*, 921 F.2d 204, 206 (9th Cir.1990).

■ The finding is not clearly erroneous. Taren–Palma agreed to provide ten kilograms of cocaine and repeatedly assured his prospective buyers that he could provide that amount with adequate notice. The fact that only two kilograms were seized does not preclude a finding of ten kilograms. The district court may consider the weight under negotiation. *United States v. Alvarez–Cardenas*, 902 F.2d 734, 736 (9th Cir.1990). Evidence of Taren–Palma's participation in a conspiracy to sell ten kilograms of cocaine is sufficient to support the district court's determination of his base offense level.

## II. Calderon–Perez

### A. *Severance Motion*

■ Calderon–Perez argues that the district court erred in denying his motion for

severance, and that joinder in this case was improper and prejudicial under Federal Rules of Criminal Procedure 8 and 14. We review motions to sever for abuse of discretion. *See United States v. Mariscal,* 939 F.2d 884, 885 (9th Cir.1991). Joinder must be so manifestly prejudicial that the district court was required to conduct separate trials. *Id.* Calderon–Perez has the burden of proving clear, manifest or undue prejudice from the joint trial. *United States v. Joetzki,* 952 F.2d 1090, 1094 (9th Cir.1991). The evidence of prejudice must demonstrate that Calderon–Perez was denied a fair trial. *Id.*

Calderon–Perez complains that joinder deprived him of Taren–Palma's exculpatory testimony. Taren–Palma provided an affidavit stating that (1) he would testify at a separate trial, and his testimony would be favorable to Calderon–Perez; and (2) he would testify that (a) Calderon–Perez was not involved in any dealings with him regarding the incident that ended in their arrest, (b) Calderon–Perez did not knowingly transport or bring the cocaine that was seized, and (c) he did not speak to Calderon–Perez in the presence of the undercover officer or informant about the cocaine.

■ "In considering a motion to sever based on the allegation that a codefendant will provide exculpatory testimony, the trial court must weigh several factors, including the good faith of the intent to have a codefendant testify, the probability that the testimony will materialize, the economy of a joint trial, the possible weight and credibility of the predicted testimony, and the degree to which the predicted testimony is exculpatory." *United States v. Cuozzo,* 962 F.2d 945, 950 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992). The proffered testimony must be "substantially exculpatory." *Mariscal,* 939 F.2d at 886. Testimony merely contradicting the government's proof is insufficient. *Id.*

■ Taren–Palma's affidavit was not sufficiently exculpatory to require the district court to conduct separate trials. The affidavit, stating that Taren–Palma did not speak to Calderon–Perez about the cocaine in the presence of the undercover officer, merely contradicted the government's proof. Tar-

en–Palma's statement that Calderon–Perez did not knowingly transport the cocaine is irrelevant. The government did not attempt to prove that Calderon–Perez transported the cocaine.

■ Taren–Palma's statement that Calderon–Perez was not involved in any drug dealings is arguably exculpatory. The statement is not specific enough, however, to require severance. It fails, for instance, to explain why Calderon–Perez was present or why he was carrying a gun at the transaction. A mere assertion of ultimate facts is not substantially exculpatory. *See United States v. Ford,* 870 F.2d 729, 730–32 (D.C.Cir.1989) (holding that proffered testimony stating that defendant "had nothing to do with the transaction" was insufficient to mandate severance). The district court properly determined that the Taren–Palma affidavit was not substantially exculpatory to mandate severance.

■ Calderon–Perez next argues that he was the victim of "prejudicial spillover" because there was such overwhelming evidence against Taren–Palma. The fact that more evidence was introduced against his codefendant is insufficient to show that joinder was improper. *United States v. Polizzi,* 801 F.2d 1543, 1554 (9th Cir.1986). There is no showing that the jury was unable to compartmentalize the evidence on the various counts against the various defendants. *See United States v. Felix–Gutierrez,* 940 F.2d 1200, 1210 (9th Cir.1991), *cert. denied,* — U.S. —, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993). The district court instructed the jury to consider the case of each defendant separately. "Judicial economy justifies reliance on the jury to follow the instructions of the court that segregate the evidence and limit the applicability of the evidence to each defendant." *United States v. Vaccaro,* 816 F.2d 443, 448 (9th Cir.), *cert. denied,* 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987).

■ Finally, Calderon–Perez argues that joinder deprived him of necessary evidence, namely (1) Seely's bias toward the government, induced by his arrest warrant being quashed; and (2) Taren–Palma's prior deliv-

ery of 80 kilograms of cocaine without the help of Calderon–Perez or another armed person (evidence which the court excluded as unduly prejudicial).

We reject the arguments. No court ruling precluded Calderon–Perez from proving bias; the decision not to ask about the warrant was purely strategic. Furthermore, Taren–Palma's alleged habit of not bringing an armed person to other cocaine transactions is rank speculation. Calderon–Perez offers no evidence to support this claim. Calderon–Perez was not prejudiced by a joint trial.

### B. *Expert Translation*

Calderon–Perez, like Taren–Palma, challenges the admissibility of Soto's testimony. Soto's testimony was helpful to the jury and was not unduly prejudicial. The district court did not err in admitting the testimony.

### C. *Dismissal Based on the Sixth Amendment*

▮ Calderon–Perez argues that the district court should have dismissed the indictment because the prosecutor interfered with his ability to prepare his case, in violation of his Sixth Amendment rights. We review this issue de novo. *United States v. McDougherty*, 920 F.2d 569, 571 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991).

After the court ordered the government to arrange a telephonic interview between the defense and Seely, the informant told the defense counsel that he did not wish to be interviewed but desired to "wait until trial." The defense then asked Seely to refrain from speaking with the prosecution, at which time the prosecutor instructed Seely to hang up the telephone.

▮ The government did not interfere with the defense's ability to prepare its the case by instructing Seely to hang up. Seely had already said that he did not wish to be interviewed. The defense is not entitled to have the informant produced in advance of trial. *United States v. Bonilla*, 615 F.2d 1262, 1264 (9th Cir.1980). Nor did the district court order that the defense be permitted to interview Seely. The court stated

merely that the "consent or denial of a pretrial interview by the informant must be communicated by the informant." There was no Sixth Amendment violation.

### D. *Expert Testimony Regarding Firearms*

▮ Calderon–Perez argues that the district court erred in admitting Kaminski's testimony regarding the use of guns in narcotics transactions. Kaminski testified that firearms are often used in drug transactions to protect either the money or the drugs at the time of the exchange. We review the district court's decision to admit expert opinion testimony for abuse of discretion. *United States v. Dischner*, 974 F.2d 1502, 1521 (9th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993).

We have held that similar evidence is admissible for the limited purpose of explaining the modus operandi of the crimes charged. *See United States v. Gomez–Norena*, 908 F.2d 497, 501 (9th Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990).

Our decisions in *United States v. Lim*, 984 F.2d 331 (9th Cir.1993), *petition for cert. filed* (U.S. Apr. 27, 1993) (No. 92–8546), and *United States v. Lui*, 941 F.2d 844, 848 (9th Cir.1991), are not to the contrary. Those cases involved drug courier profile evidence. We noted that such evidence "is inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity." *Lim*, 984 F.2d at 334–35; *Lui*, 941 F.2d at 848. We held that "[d]rug courier profile testimony may be admissible to establish modus operandi, but only in exceptional, complex cases" so that "perfectly innocent items" are not turned into "evidence of guilt." *Id.*

In *Lim*, we held that the district court abused its discretion in admitting drug courier profile evidence because the profile was applied to "two innocuous bits of evidence" concerning Lim: 1) the fact that he was engaging in domestic travel; and 2) the fact that he was *not* carrying drugs. *Lui* also involved the application of a drug courier profile to "items that were perfectly innocent": 1) use of a hard-sided suitcase; and 2)

travelling for the stated purpose of visiting a relative.

Calderon–Perez was carrying a concealed, loaded, and cocked .38 caliber handgun in his waistband at the time of his arrest. Such evidence is hardly "innocuous" or "perfectly innocent." *Lim* and *Lui* therefore do not bar Kaminski's testimony.

Nor do we agree that the jury surely was able to infer the connection between the gun and the drug transaction without the aid of Kaminski's testimony. The connection is no more obvious than the use of "lookouts," *United States v. Fleishman,* 684 F.2d 1329, 1335–36 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982), or "pay and owe" ledgers, *United States v. Espinosa,* 827 F.2d 604, 611–13 (9th Cir.1987), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988), in drug transactions. We have upheld the admission of expert testimony in those situations. We must do so here.

### E. *Refusal to Give Proposed Jury Instructions*

Calderon–Perez argues that the district court should have given the three "theory of the case" jury instructions he proposed. We review this issue *de novo. United States v. Lopez,* 885 F.2d 1428, 1434 (9th Cir.1989), *cert. denied,* 493 U.S. 1032, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990). The defense is entitled to have instructions given on its theory if it is supported by law and has some factual foundation. *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990). If the defense instructions are refused, the instructions given by the court must adequately cover the defense theory. *See United States v. Joetzki,* 952 F.2d 1090, 1095 (9th Cir.1991).

The district court did not err in refusing the proposed instructions because the defendant's theories of mere presence, association, and knowledge were adequately covered by several of the court's instructions. The court instructed the jury regarding the insufficiency of mere association, the requirement of willful participation with the intent to further the conspiracy, and the requirement of knowing action in furtherance of the conspiracy. A trial judge is not required to instruct the jury in the chosen words of the accused and may refuse a proposed instruction if it finds that it is not a fair statement of the law or facts. *United States v. Goland,* 959 F.2d 1449, 1453–54 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1384, 122 L.Ed.2d 759 (1993). The district court did not err in refusing the proposed defense instructions.

### F. *Sentencing Reduction Based on Minor Role*

Calderon–Perez argues that the district court should have decreased his base offense level, pursuant to U.S.S.G. § 3B1.2, for his minor role in the conspiracy. We review issues concerning the application of the sentencing guidelines *de novo ;* the underlying facts found by the district court are reviewed for clear error. *United States v. Uzelac,* 921 F.2d 204, 206 (9th Cir.1990). A downward adjustment under § 3B1.2 is to be used infrequently and only in exceptional circumstances. *United States v. Christman,* 894 F.2d 339, 341 (9th Cir.1990). Calderon–Perez has the burden of proving that he was a minor participant by a preponderance of the evidence. *United States v. Sanchez,* 908 F.2d 1443, 1449 (9th Cir.1990).

The district court properly found that Calderon–Perez was not a minor participant. He carried a weapon during the course of the offense. Calderon–Perez was therefore not "substantially less culpable than the average participant." *United States v. Zweber,* 913 F.2d 705, 710 (9th Cir.1990). The district court properly refused the downward adjustment.

Calderon–Perez also complains that the district court improperly relied *twice* on the use of the gun: first, in refusing to give a downward adjustment for "minor participant," and second, because he was sentenced separately under 18 U.S.C. § 924 for possessing a gun.

In *United States v. Nakagawa,* 924 F.2d 800 (9th Cir.1991), we held that an upward departure on a possession offense for possession of a weapon was not inconsistent with the mandatory sentence under § 924 because

"the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.... Congress did not intend for [§ 924] to provide the only source of increased punishment for possessing a weapon during the commission of a crime." *Id.* at 805 (citations omitted). A refusal to adjust downward is less severe than an upward departure. Under *Nakagawa*, therefore, no Double Jeopardy violation occurred. The district court properly considered for purposes of Calderon–Perez's conspiracy sentence that he carried a firearm.

### G. *Sufficiency of the Evidence*

■ Calderon–Perez challenges the sufficiency of the evidence to support a finding that he participated in the conspiracy. We decide, after reviewing the evidence in the light most favorable to the government, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Aichele,* 941 F.2d 761, 763 (9th Cir.1991).

■ The essential elements of a conspiracy are (1) an agreement to accomplish an illegal objective; (2) the commission of an overt act in furtherance of the conspiracy; and (3) the requisite intent necessary to commit the underlying offense. *United States v. Thomas,* 887 F.2d 1341, 1347 (9th Cir.1989). An agreement may be inferred from the defendant's acts, or from other circumstantial evidence, and a defendant's proximity to the scene of illicit activity may support an inference when viewed in context with other evidence. *Id.* at 1347–48. Once the existence of a conspiracy is shown, the government need only prove a slight connection between the defendant and the conspiracy. *Aichele,* 941 F.2d at 763–64. A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the codefendants' actions.

In *United States v. Power,* 881 F.2d 733 (9th Cir.1989), we affirmed the defendant's conspiracy conviction based on the following evidence: 1) the defendant accompanied his coconspirators to a drug transaction; 2) he carried a gun during the transaction; and 3) he made a statement indicating that he knew

a drug transaction was taking place. *Id.* at 737. Calderon–Perez was present during the drug transaction; he confirmed the quality of the cocaine; and he carried a weapon during the transaction. A reasonable jury could have found that Calderon–Perez was a knowing participant in the conspiracy and that an overt act was committed. The district court properly denied his motions for acquittal and new trial on the grounds of insufficient evidence.

Calderon–Perez also claims that the government's proof impermissibly varied from the allegations in the indictment. *See United States v. Von Stoll,* 726 F.2d 584, 586 (9th Cir.1984). The indictment alleged a conspiracy to distribute five or more kilograms of cocaine, not two. The claim lacks merit.

■ The amount of the cocaine is not an element of the conspiracy offense. *See United States v. Sotelo–Rivera,* 931 F.2d 1317, 1319 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1186, 117 L.Ed.2d 428 (1992). Any variance in the amount of cocaine is therefore insufficient to mandate reversal. *See Von Stoll,* 726 F.2d at 587 (noting that a variance does not require reversal where it does not alter the crime charged).

**AFFIRMED.**

POOLE, Circuit Judge, dissenting in part.

While I concur in affirming Taren–Palma's conviction, I believe that the district court's allowing expert testimony regarding Calderon–Perez' use of a firearm during the commission of the offenses for which he was convicted is reversible error, and I dissent on that basis.

Clearly, in order to be admissible, expert testimony must not be unduly prejudicial under Federal Rule of Evidence 403. "A trial court should not routinely admit [expert testimony], but should carefully weigh the testimony's probative value against its possible prejudicial effect." *United States v. Espinosa,* 827 F.2d 604, 612 (9th Cir.1987), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988). Applying this principle, this court has held that expert testimony is only admissible to establish the modus oper-

andi of crimes in *complex cases*, and that in simple cases, such evidence is unduly prejudicial. *See United States v. Lim*, 984 F.2d 331, 334–35 (9th Cir.1993), *cert. denied*, — U.S. —, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993); *United States v. Lui*, 941 F.2d 844, 848 (9th Cir.1991) (*citing United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir.1984)). While *Lim* and *Lui* were cases involving the admissibility of expert testimony regarding drug courier profiles, I disagree with the majority that the principles stated therein are less applicable to this case. As we indicated in *Espinosa*, the court must seriously consider the prejudicial effect of expert testimony in every instance, not just in drug courier cases. *See Espinosa*, 827 F.2d at 612.

As in *Lim* and *Lui*, there was nothing complex about this conspiracy. It involved a simple drug transaction, a limited number of participants and occurred over the span of a few weeks. The jury surely was able to infer the connection between the firearm and the drug transaction without the aid of Kaminski's testimony. Similarly, in *United States v. Castillo*, 924 F.2d 1227 (2d Cir.1991), the Second Circuit held that police testimony regarding the modus operandi of drug dealers, such as the connection between their possessing scales, baggies and firearms and their drug related activities, was unnecessary because jurors "are capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.... [W]e are not convinced that ... jurors ... need an expert to enlighten them as to such elementary issues." *Id.* at 1232–33. Because Kaminski's testimony was equally unnecessary, it should have been excluded.

The potential effect of Kaminski's testimony shows that its erroneous admission was not harmless. An evidentiary error is only harmless if it is more probable than not that the prejudice resulting from the error did not materially affect the verdict. *See Lim*, 984 F.2d at 335 (citations omitted). The evidence against Calderon–Perez was far less than overwhelming, and Kaminski's testimony

transformed a possible inference from his carrying a firearm during the drug transaction into evidence itself. Most likely, this additional evidence doubly skewed the jury's determination by also enabling the jury to disregard the possibility that Calderon–Perez' possessing the firearm was consistent with his claim of innocence.[1] Furthermore, the possibility of such undue prejudice was greater in this case because Kaminski's status as a law enforcement officer gave her expert testimony "an aura of special reliability and trustworthiness." *Espinosa*, 827 F.2d at 613 (citations and internal quotations omitted). Thus, Calderon–Perez was impermissibly tried based on the standard techniques utilized by law enforcement officials in investigating criminal activity rather than the evidence against him. *See Lui*, 941 F.2d at 847. For that reason, I believe that reversal is required.

I therefore respectfully dissent.

---

1. Possessing a handgun is legal in Arizona. Moreover, while the majority states that the weapon was "concealed, loaded and cocked," this was a disputed fact at trial obviously emboldened by the erroneous admission of Kaminski's testimony.