48 F.3d 1229
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Concepcion GOMEZ-AGUILAR, aka Concepcion Aguilar-Gomez,
Defendant-Appellant.
 No. 94-50494.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 21, 1995.*
Decided Feb. 28, 1995.
 
 Before: SCHROEDER, CANBY, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Concepcion Gomez-Aguilar (aka Concepcion Aguilar-Gomez) appeals her thirty-four month sentence imposed following the entry of a guilty plea to conspiracy to transport and harbor illegal aliens in violation of 8 U.S.C. Secs. 1324(a)(1)(B), (C), and 18 U.S.C. Sec. 371. Gomez contends that the district court erred in adjusting her offense level upwards: (1) based on the number of unlawful aliens involved pursuant to U.S.S.G. Sec. 2L1.1(b)(2)(B); and (2) for being an organizer under U.S.S.G. Sec. 3B1.1(c). We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 
 3
 Gomez contends that the district court erred in finding that her offense involved between twenty-five and ninety-nine unlawful aliens because only five unlawful aliens were in her house at the time of her arrest. This contention lacks merit.
 
 
 4
 We review the district court's factual findings underlying its application of the Guidelines for clear error. United States v. Taren-Palma, 997 F.2d 525, 532 (9th Cir.1993), cert. denied, 114 S.Ct. 1648 (1994). The Guidelines require the sentencing court to increase a defendant's offense level by four levels if the offense involved the smuggling, transporting or harboring of twenty-five to ninety-nine unlawful aliens. U.S.S.G. Sec. 2L1.1(b)(2)(B).
 
 
 5
 Here, the district court's findings were not clearly erroneous. See Taren-Palma, 997 F.2d at 532. At the time of her arrest on March 1, 1994, agents found five unlawful aliens in a room in Gomez's house. Additionally, agents found six other suspected unlawful aliens in Gomez's backyard. However, the fact that only five or eleven unlawful aliens were found at the time of arrest does not preclude a finding that the conspiracy involved a greater number of unlawful aliens. See id. (fact that only two kilograms of cocaine were seized did not preclude sentencing court from finding that defendant was able to produce ten kilograms of cocaine).
 
 
 6
 At the time of arrest, agents found three spiral notebooks on the kitchen table. These notebooks contained over 200 names of suspected unlawful aliens (including the five unlawful aliens found in the house on March 1, 1994), telephone numbers, payment amounts, Gomez's name, a beeper number for "Concha", and the names and telephone numbers of Gomez's co-conspirators. The agents found the beeper, which matched the number for "Concha" in Gomez's purse. The government submitted exhibits to show that Gomez had high monthly telephone bills (approximately $600) and that her source of income appeared limited to social security payments.
 
 
 7
 Furthermore, the government submitted the affidavit of Border Patrol Agent John Mulvey. According to Mulvey, smuggling operations frequently maintain "drop houses" between border areas and border patrol checkpoints. Smuggling operations generally keep ledgers to document the names of the unlawful aliens, their destinations, the negotiated smuggling fees, and the telephone numbers of their sponsors. The telephone bills at drop houses are usually high. Agent Mulvey also stated that Gomez was under investigation in June 1993 for transporting and harboring unlawful aliens. On three occasions, unlawful aliens were found in Gomez's car at border patrol checkpoints. In addition, Agent Mulvey stated that he saw Gomez driving suspected unlawful aliens to her house during June 1993. Accordingly, the district court did not clearly err in finding that Gomez's offense involved between twenty-five and ninety-nine unlawful aliens. See U.S.S.G. Sec. 2L1.1(b)(2)(B); Taren-Palma, 997 F.2d at 532.[1]
 
 
 8
 Gomez contends that the district court erred in finding that she was an organizer, leader, manager or supervisor pursuant to U.S.S.G. Sec. 3B1.1(c). This contention lacks merit.
 
 
 9
 Whether a defendant was an organizer, leader, manager, or supervisor within the meaning of U.S.S.G. Sec. 3B1.1(c) is a question of fact reviewable under the clearly erroneous standard. United States v. Fagan, 996 F.2d 1009, 1016 (9th Cir.1993); United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990). The government bears the burden of proof by a preponderance of the evidence. Mares-Molina, 913 F.2d at 773. An increase under U.S.S.G. Sec. 3B1.1(c) is appropriate if there is evidence that "the defendant exercised some control over others involved in commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." United States v. Harper, 33 F.3d 1143, 1150-51 (9th Cir.1994) (quoting Mares-Molina, 913 F.2d at 773), cert. denied, 115 S.Ct. 917 (1995); Fagan, 996 F.2d at 1016.
 
 
 10
 Here, the district court did not clearly err in finding that Gomez was an organizer because she recruited and paid others to transport unlawful aliens. See Fagan, 996 F.2d at 1016-17. One of Gomez's co-defendant's, Pena-Alonzo, stated that he received $125 from Gomez when he arrived at her residence with the five unlawful aliens. The other co-defendant, Vargas, corroborated Pena-Alonzo's story. See United States v. Diaz-Rosas, 13 F.3d 1305, 1308 (9th Cir.) (per curiam) (evidence sufficient to support Sec. 3B1.1(c) adjustment where two co-defendants testified that they worked for defendant and were being paid by him), cert. denied, 114 S.Ct. 1848 (1994). In addition, there was evidence that Gomez maintained the drop house, maintained the records of the smuggling operation, and determined who got paid. See U.S.S.G. Sec. 3B1.1, comment. (n. 4) (factors to be considered include nature of participation, recruitment of accomplices, degree of participation in planning or organizing offense, and degree of control and authority exercised over others). Accordingly, the district court did not clearly err in finding that Gomez was an organizer within the meaning of U.S.S.G. Sec. 3B1.1(c). See Fagan, 996 F.2d at 1016-17.
 
 
 11
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Gomez contends that the district court should have applied a higher standard than preponderance of the evidence in determining the relevant sentencing factors. Generally, the preponderance of evidence standard applies unless a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction. See United States v. Sanchez, 967 F.2d 1383, 1385 (9th Cir.1992); United States v. Restrepo, 946 F.2d 654, 659 (9th Cir.1991), cert. denied, 112 S.Ct. 1564 (1992). Here, Gomez's sentencing adjustment for transporting unlawful aliens was not so extreme as to require a higher standard of proof than preponderance of the evidence. See Sanchez, 967 F.2d 1383, 1386 (9th Cir.1992); Restrepo, 946 F.2d at 659