122 F.3d 1074
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appelle,
v.
Octavio BAROCIO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee.
v.
Moises GOMEZ, aka "Santiago," Defendant-Appellant.
 Nos. 96-10207, 96-10237.
 United States Court of Appeals, Ninth Circuit.
 Sept. 5, 1997.
 
 Appeals from the United States District Court for the District of Hawaii, No. CR-95-00476-HG-07; Helen Gillmor, District Judge, Presiding.
 Before: CHOY, HALL, and WIGGIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant-appellant Octavio Barocio ("Barocio") appeals his jury Conviction and his sentence for conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846, and conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956(a)(1)(A). Defendant-appellant Moises Gomez ("Gomez") appeals his sentence for conspiracy to possess with intent to distribute and distribution of methamphetamine and crystal methamphetamine in violation of 21 U.S.C. § 846. Gomez also joins in the arguments made in Barocio's opening brief, and Gomez's appeal was consolidated with Barocio's pursuant to the district court's order dated November 1, 1996. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 I. Voir dire
 
 3
 The trial court has broad discretion with respect to the questions asked during voir dire. United States v. Anzalone, 886 F.2d 229, 234 (9th Cir.1989). However, Barocio correctly points out that the trial judge should make an inquiry during voir dire as to racial biases when there is a "reasonable possibility that racial or ethnic prejudice will influence the jury's evaluation of the evidence." Rosales-Lopez v. United States, 451 U.S. 182, 193 (1981).[1] The district court adequately made such an inquiry in this case. The questions asked by the court were reasonably sufficient to test the jury for bias and partiality. See United States v. Dischner, 974 F.2d 1502, 1522 (9th Cir.1992). The trial judge asked not one, but two questions specifically directed toward the issue of racial prejudice. None of the jurors answered these questions in the affirmative. The trial court also cautioned the jurors not to let their personal biases interfere with their reaching a fair verdict. This case did not involve allegations of racial or ethnic prejudice, nor did it involve allegations of a crime perpetrated by members of one ethnic group against another ethnic group. See Rosales-Lopez, 451 U.S. at 192. We hold that the district court did not abuse its discretion in refusing to ask additional questions regarding racial bias and ethnic prejudice as requested by Barocio.
 
 II. Chart exclusion
 
 4
 Barocio contends that the district court abused its discretion in excluding a chart that depicted the hierarchical structure of the Cabaltera drug organization. Reversal of a district court's decision regarding the admissability of evidence is warranted only where the nonconstitutional error more likely than not affected the verdict. United States v. Karterman, 60 F.3d 576, 579 (9th Cir.1995).
 
 
 5
 The district court did not abuse its discretion in excluding the chart. The drug organization depicted on the chart was different from that of the charged conspiracy, and the district court properly had concerns about relevancy. Moreover, the district court found that the chart was not necessarily inconsistent, but rather was incomplete. Even if the district court held abused its discretion, reversal on that ground would not be warranted. Barocio has made no showing that any error more likely than not affected the verdict. The trial court did permit cross-examination with respect to the fact that Barocio's name did not appear on the chart. It is unlikely that the exclusion of the chart itself affected the jury's verdict in light of the other evidence against Barocio.
 
 
 6
 Additionally, Barocio claims that the district court's limitation on the questions his counsel could ask of Cordova pertaining to the chart denied Barocio his right of confrontation. The district court's restriction of cross-examination "does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant." United States v. Shabani, 48 F.3d 401, 403 (9th Cir.1995).
 
 
 7
 The district court limited the scope of cross-examination to those persons on the chart who were involved in the conspiracy; the court had concerns of relevancy regarding detailed questions with respect to persons not involved in the charged conspiracy. The district court's decision regarding the relevance of evidence is reviewed for abuse of discretion, United States v. Easter, 66 F.3d 1018, 1020 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1026 (1996), and Barocio has produced no evidence showing that the district court abused its discretion in this instance. Additionally, Barocio has not shown that he was prejudiced by the limitation on cross-examination. Moreover, the record shows that the jury had "sufficient information to appraise the biases and motivations" of Cordova. See United States v. Manning, 56 F.3d 1188, 1197 (9th Cir.1995) (citation omitted). Barocio's counsel was able to elicit on cross-examination that the organizational chart existed; that the chart was much more comprehensive than an earlier chart drawn by Cordova; that the chart contained over twenty names; and that the chart did not include Barocio's name.
 
 
 8
 We hold that the district court, did not abuse its discretion in excluding the chart from evidence, nor was Barocio's right to confrontation infringed upon by the district court's limitation on cross-examination regarding the chart.
 
 III. Multiple conspiracy instruction
 
 9
 Barocio claims that the district court erred in failing to give the instruction that Barocio requested regarding multiple conspiracies. His claim is meritless.
 
 
 10
 Some evidence of separate agreements and purposes is necessary for a finding of multiple conspiracies. United States v. Taren-Palma, 997 F.2d 525, 530 (9th Cir.1993). "A mere change in participants and a lapse of time, without more, are insufficient to support a finding of multiple conspiracies." Id. Barocio cites to telephone calls between Barocio and undercover agent Castillo regarding Barocio's obtaining drugs from Barocio's uncle as evidence supporting a finding of multiple conspiracies. There does not appear to be a sufficient foundation in the evidence to support a finding of a conspiracy between only Barocio and his uncle, separate from the charged conspiracy, such that the failure of the district court to find such a foundation would be an abuse of that court's discretion.[2] Accordingly, we hold that the district court did not abuse it's discretion in refusing Barocio § requested jury instruction on multiple conspiracies.
 
 IV. Closing argument interruption
 
 11
 Barocio claims that the district court's interruption of and comment upon his closing argument denied him a fair trial and effective assistance of counsel. This contention has no merit.
 
 
 12
 For a conviction to be overturned on the basis of denial of a fair trial through the interruption of a closing argument, the record must " 'disclose[ ] actual bias on the part of the trial judge or leave[ ] the reviewing court with an abiding impression that the judge's remarks ... projected to the jury an appearance of advocacy or partiality.' " United States v. Mares, 940 F.2d 455, 464 (9th Cir.1991) (quoting United States v. Mostella, 802 F.2d 358, 361 (9th Cir.1986)).
 
 
 13
 Barocio cites no case from this or any other circuit in which the district court's interruption of a closing argument, and subsequent striking of a portion of that argument, rises to the level of a constitutional violation.
 
 
 14
 The record in this case does not indicate any actual bias on the part of the district court, nor has Barocio pointed to any. The record also does not show an "appearance of advocacy or partiality" on the part of the district court in favor of the government. First of all, the district court cautioned the jury to disregard any comments it made to the attorneys during the trial:
 
 
 15
 During the trial I may occasionally make comments to the lawyers.... Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.
 
 
 16
 Moreover, Barocio's counsel objected to a portion of the government's closing argument, and the court struck that portion of the argument from the record.[3] Thus, there is no indication that the interruption of Barocio's counsel's closing argument created an appearance of partiality on the part of the court in favor of the government. See Mares, 940 F.2d at 464 (holding that the court's interruption of defense counsel's closing argument did not create an appearance of partiality on the part of the court towards the government).[4]
 
 
 17
 V. Two-level increase for obstruction of justice
 
 
 18
 A two-level increase for obstruction of justice must be given under the Sentencing Guidelines if Barocio "willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation [or] prosecution of ... the instant offense." U.S.S.G. § 3C1.1. The commission of perjury is one such method of obstructing justice. U.S.S.G. § 3C1.1, comment., (n.3(b)). A defendant commits perjury if he or she provides "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993).
 
 
 19
 If a defendant objects to a sentence enhancement for obstruction of justice based on his or her trial testimony, the district court must "review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the perjury definition," when making the determination that a sentence enhancement for obstructing justice is in fact warranted. Dunnigan, 507 U.S. at 95. The mandatory findings are "(1) false testimony, (2) on a material matter, (3) with willful intent." United States v. Ancheta, 38 F.3d 1114, 1118 (9th Cir.1994) (citation omitted)
 
 
 20
 The district court explicitly found that Barocio lied about his role in the conspiracy. Specifically, the court stated:
 
 
 21
 [T]his is a case in which the defendant testified and a number of other people testified and the other people who testified contradicted what the defendant said. It's not just a matter of his credibility in the sense if he was the only person testifying and there was a decision as to whether or not to believe him.
 
 
 22
 All of the evidence put on in the Government's case with numerous defendants contradicts what he had to say. And I don't think we have a situation where it's just a simple credibility finding. Not only would the jury have to believe the defendant, they would have to disbelieve a number of other people. And in terms of his right, his constitutional right to deny guilt, no one, and I am the last person who would question his ability to do that, but an affirmative statement which, and a number of affirmative statements which appear and are found by the jury and are believed by this Court to be lies, is not protected by the Constitution in the sense that he can't have any ramifications as to obstruction of justice.
 
 
 23
 So the Court does find that he took the stand and he lied affirmatively about his role and as to what, he did. So the obstruction of justice points stand.
 
 
 24
 Although the district court in this case did not use the words "material" or "willful" in its factual findings, its findings nevertheless are sufficient to satisfy the Dunnigan requirement. Dunnigan, 507 U.S. at 95 ("[I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if ... the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.") The court found that Barocio "took the stand and he lied affirmatively," which satisfies the "false testimony" prong. The court found that Barocio was untruthful "about his role and what he did," which shows that the court believed Barocio lied about a material matter, since his prosecution was based on his role and what he did in the conspiracy. Finally, the court found that Barocio had made "a number of affirmative statements" that the court believed were lies, which covers the requirement that the court find that Barocio's lies be willful. These findings of the district court are not clearly erroneous.
 
 
 25
 VI. Factual findings regarding the amount of drugs
 
 
 26
 The trial judge must sentence each conspirator "on the basis of the quantity of drugs which [the conspirator] reasonably foresaw or which fell within 'the scope' of his particular agreement with the conspirators," rather than on the basis of the amount of drugs distributed by the conspiracy as a whole. United States v. Gutierrez-Hernandez, 94 F.3d 582, 585 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 752 (1997). The Sentencing Guidelines require an "express factual finding" by the trial court regarding the amount of drugs attributable to each conspirator being sentenced. Id. at 585. The court may adopt the calculations of the presentence report ("PSR") to meet this requirment. United States v. Cazares, 112 F.3d 1391, 1396 (9th Cir.1997).
 
 
 27
 At the outset, we note that Barocio did not specifically object to the conclusion in the PSR regarding the amount of drugs for which he was to be held responsible. However, he did dispute "all factual information involving or tending to involve him in intentionally and/or knowingly participating in the offenses." Assuming that this is an adequate objection, we conclude that the district court's findings of fact regarding the amount of drugs attributable to Barocio were sufficient.
 
 
 28
 The district court may adopt the factual findings of the probation officer as expressed in the PSR to satisfy the Rule 32 requirement, Cazares, 112 F.3d at 1396, and the court did so in this case. During Barocio's sentencing, the court stated, with regard to the presentence report: "And we--before we go on to paragraph 36, with respect to all of the other paragraphs previously alluded to, the Court is adopting the factual statements contained in the presentence report as modified and I make those part of my findings of fact." The intention of the district court to adopt the findings of the PSR a part of the court's factual findings is reinforced by the court's indication of such an intention on the judgment form.[5] The district court's judgment stating that it adopted the conclusions of the PSR, along with its comments during sentencing hearing to that effect, are sufficient.[6]
 
 
 29
 Gomez, on the other hand, makes two contentions: 1) the court failed to resolve his objections to certain facts contained in the PSR; and 2) the district court failed to make the required factual findings regarding the amount of drugs that Gomez could have reasonably foreseen as being part of the conspiracy.[7]
 
 
 30
 Rule 32(c)(1) of the Federal Rules of Criminal Procedure provides that, if a defendant challenges the factual accuracy of the PSR, then as to each matter challenged the court shall "make a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in ... sentencing." The trial court should "make clear on the record" its resolution of all issues in the PSR that are disputed, and specific factual findlngs are encouraged. United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990). The district court may satisfy this requirement by adopting the conclusions in the PSR. United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990).
 
 
 31
 Gomez' contention that the district court failed to resolve the disputed matters in the PSR is without merit. Regarding Gomez' objections to the PSR, the district court stated:
 
 
 32
 The Court at this time adopts the presentencing--presentence report, and with respect to the issues which Mr. Arakaki on behalf of Mr. Gomez has raised, the Court was present at the--and presided over the trial, and just as the jury was persuaded as to the veracity of the testifying witnesses, the Court also is making a finding that the presentence report reflects the facts as they came before this Court and that the credibility of the witnesses--the Court is resolving in favor of the credibility of the witnesses relied on in the presentence report.
 
 
 33
 This statement indicates that the court did take Gomez' objections into consideration, but nevertheless adopted the conclusions in the PSR.
 
 
 34
 The district court also expressly adopted the conclusions in the PSR regarding the amount of drugs for which Gomez was responsible. The facts in the PSR supported Gomez' involvement as the primary supplier of methamphetamine for the conspiracy. See United States v. Hanoum, 33 F.3d 1128, 1132 (9th Cir.1994) (holding that the district court did not fail to make the required express factual findings, when the court expressly adopted the PSR and the facts in the PSR supported the conclusion reached by the court). The district court also started that the PSR "reflects the facts as they came before this Court" and that the court was resolving disputed issues in favor of the credibility of the witnesses. These findings of the district court regarding Gomez were sufficient.
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In Rosales-Lopez, the trial court did not ask any questions specifically geared toward racial or ethnic prejudice regarding Mexicans, despite the fact that petitioner was of Mexican descent and the case involved a conspiracy to transport illegal aliens from Mexico. The court did ask the jurors if they had any particular feelings about aliens. Id. at 186. The Supreme Court found nd abuse of discretion. Id. at 194
 
 
 [2]
 As a matter of fact, Barocio testified that he told Castillo that his uncle could supply Castillo with methamphetamine in order to get rid of Castillo. Barocio testified that he had no knowledge of his uncle ever possessing methamphetamine
 
 
 [3]
 During the ensuing sidebar, counsel for Barocio asked that a portion of the government's argument "be stricken just like my remarks were stricken, so same with the government." The court responded, "Okay. I'm going to strike it...."
 
 
 [4]
 Barocio points out that the trial court and Barocio's counsel asked each other to speak more softly during the sidebar in which the court informed Barocio's counsel that it thought that he "went too far" in his closing argument. This fact does not alter our conclusion. See Mares, 940 F.2d at 464 (finding no error where district court, in full hearing of the jury, interrupted and commented upon defense counsel's closing argument)
 
 
 [5]
 The PSR contained factual findings regarding the amount of drugs attributable to Barocio
 
 
 [6]
 Barocio also argues that the district court erred in attributing "all of the methamphetamine involved in the alleged conspiracy" to Barocio. This conclusion of the district court is not clearly erroneous, given the testimony of Barocio's co-conspirators regarding his involvement in the conspiracy
 
 
 [7]
 Gomez did object to the amount of drugs attributed to him in the PSR, as well as to various matters relating to his "motivation for engaging in criminal activity and the extent of his involvement in the conspiracy."