**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Cornelio Thomas FOSTER–TORRES,
aka Thomas Conny Foster; Cornelio
Foster–Torres, Defendant—Appellant.**

**No. 01–50517.**
**D.C. No. CR–00–02564–IEG–03.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 2002.

Decided June 17, 2002.

⌬683

Before FERNANDEZ, WARDLAW and W. FLETCHER, Circuit Judges.

### MEMORANDUM *

Cornelio Thomas Foster–Torres appeals his conviction and sentence after jury trial of conspiracy to unlawfully deal in firearms, in violation of 18 U.S.C. §§ 371, 922(a)(1)(A) and 924(A). We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 1294(1), and we affirm.

Foster–Torres first argues that the Government presented insufficient evidence to prove that he was guilty of conspiring with Gabriel Martinez–Ramirez and Adolfo Maciel Carillo to "knowingly engage in the business of dealing in firearms without being licensed to do so" because there was nothing linking him to Carillo. "A conspiracy is an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense." *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir.1984) (internal quotation marks and citation omitted). The test for whether a single conspiracy existed, as opposed to multiple conspiracies, "is whether there was one overall agreement to perform various functions to achieve the objectives of the conspiracy." *United States v. Arbelaez*, 719 F.2d 1453, 1457 (9th Cir.1983) (internal quotation marks and citation omitted).

There is no requirement that every member of the conspiracy know every other member or be aware of all acts committed in furtherance of the conspiracy. *United States v. Taren–Palma*, 997 F.2d 525, 530 (9th Cir.1993); *see also United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir.1977) ("It need not even be shown that an alleged co-conspirator knew all of the purposes of and all of the participants in the conspiracy." (citation omitted)). " 'For the convictions to stand, the Government must produce enough evidence to show that each defendant knew or had reason to know the scope of the (criminal enterprise), and had reason to believe that their own benefits derived from the operation were dependent upon the success of the entire venture.' " *United States v. Abushi*,

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

682 F.2d 1289, 1293 (9th Cir.1982) (quoting *United States v. Perry*, 550 F.2d 524, 528–29 (9th Cir.1977)).

Viewing the evidence in the light most favorable to the Government, as we must, it was sufficient for a rational jury to conclude that Foster–Torres knew the scope of the conspiracy and that his own benefit was dependent upon the success of the entire venture—the sale of the firearms. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (relevant inquiry is "whether ... *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original)). Taped conversations showed that Foster–Torres became a member of the conspiracy as early as December 1999, and no later than January 2000. During the telephone calls that took place in January 2000, Foster–Torres agreed to supply firearms to Agent Penate. These phone calls also demonstrate that there was a meeting of the minds whereby Foster–Torres and Martinez–Ramirez agreed to sell firearms to Agent Penate.

Although Foster–Torres did not discuss the removal of serial numbers with Agent Penate, on several occasions, Foster–Torres's co-conspirator, Martinez–Ramirez, engaged in discussions regarding the obliteration of serial numbers with the agent. Moreover, as the district court noted, the Government produced evidence that it was in Foster–Torres's interest and the interest of the overall conspiracy to keep the buyer of the firearms satisfied so that the buyer was primed and ready to consummate the large firearms deal first proposed in July 2000. Therefore, a rational trier of fact could conclude that, given Foster–Torres's degree of involvement in the mechanics of the sale, although he did not know Carillo personally, he had to know the scope of the conspiracy. And he had

to know that someone like Carillo would fulfill the role of obliterating the serial numbers. *Id.; see also Abushi*, 682 F.2d at 1295 ("In sum, any separate agreements in this case 'were tied together as stages in the formation of a larger all-inclusive combination, all directed to achieving a single unlawful end or result.' " (quoting *Blumenthal v. United States*, 332 U.S. 539, 558, 68 S.Ct. 248, 92 L.Ed. 154 (1947)); *United States v. Shabani*, 48 F.3d 401, 403 (9th Cir.1995) ("It was enough for the government to prove Shabani was involved in a broad project to distribute cocaine and that his benefit depended on the success of the operation.").

Nevertheless, "[w]hen the possibility of a variance appears between the indictment and the trial proof, the trial court should instruct the jury on multiple conspiracies." *United States v. Perry*, 550 F.2d 524, 533 (9th Cir.1977) (citation omitted). Here, the district court instructed the jury, in the alternative, on the possibility of multiple conspiracies:

> [I]f you find that the conspiracy in the indictment did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find the Defendant Foster was not a member of the charged conspiracy, then you must find him not guilty, even though he may have been a member of some other conspiracy.

Therefore, even assuming that there was a possibility of confusion regarding multiple conspiracies in this case, that confusion was eliminated by the district court's instruction that Foster–Torres's guilt could be found only for involvement in the single, large conspiracy charged in the indictment. *See United States v. Loya*, 807 F.2d 1483, 1492–93 (9th Cir.1987).

Foster–Torres also contends that the trial court erred when it refused to

grant him a three-level downward adjustment pursuant to U.S.S.G. § 2X1.1. U.S.S.G. § 2X1.1(b)(2) provides:

If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

The commentary to § 2X1.1 states:

In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense. Under such circumstances, a reduction of 3 levels is provided under § 2X1.1(b)(1) or (2).

U.S.S.G. § 2X1.1, comment. (backg'd).

Here, Foster–Torres and his co-conspirators were on the verge of completing the firearms sale. But for Agent Penate's unwillingness to provide a $60,000 deposit, as was expected by Foster–Torres, and the intervention of law enforcement, the defendant would have illegally sold 498 firearms on July 28, 2000. Therefore, the district court properly denied Foster–Torres's request for a reduction. *See United States v. King*, 200 F.3d 1207, 1216 (9th Cir.1999); *United States v. Yellowe*, 24 F.3d 1110, 1113 (9th Cir.1994).

AFFIRMED.