**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lester Jay BAKER,
Defendant–Appellant.**

No. 89–1165.

United States Court of Appeals,
Tenth Circuit.

Sept. 12, 1990.

Michael G. Katz, Federal Public Defender, and Mark J. Rosenblum, Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

Michael J. Norton, U.S. Atty., and James P. Moran, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

Before TACHA, BARRETT and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Lester Jay Baker appeals his sentence for bank robbery, 18 U.S.C. § 2113(a) & (d), and receiving an explosive in interstate commerce with knowledge that the explosive would be used to kill, injure, or intimidate other individuals, 18 U.S.C. § 844(d). Baker contends that the district court erred in departing upwards from the Sentencing Guidelines due to his use of dynamite. Baker argues that dynamite falls within the definition of "dangerous weapons" for which a sentence enhancement is otherwise prescribed. Baker also objects a sentence enhancement based on a finding of abduction and his use of a firearm with respect to the receipt of explosives charge. We affirm.

I.

On February 8, 1988, Baker approached the owner of a supply store in Cripple Creek, Colorado, while wearing a mask and carrying two pistols. He demanded twenty sticks of dynamite, which the owner surrendered. The dynamite had previously been shipped in interstate commerce.

On February 9, 1988, Baker entered a federal credit union in Colorado Springs, Colorado and approached the manager. Baker and the manager went into the manager's office, where Baker had the manager open his briefcase. The briefcase contained eight to ten sticks of dynamite. Baker then produced two handguns and demanded money and threatened to blow up the bank if the money was not provided. The manager put $4700 into the briefcase.

Baker was arrested on February 11, 1988, and he later admitted to stealing the dynamite and robbing the credit union.

Baker agreed to plead guilty to the robbery charge, 18 U.S.C. § 2113(a) & (d), and the explosives receipt charge, 18 U.S.C. § 844(d). The base offense level for the robbery charge was 18. U.S.S.G. § 2B3.1(a). Because the loss was between $2501 and $10,000, the offense level was increased by one. *Id.* § 2B3.1(b)(1)(B). Finally, because Baker had "brandished" a firearm, the offense level was increased by 3. *Id.* § 2B3.1(b)(2)(C). Baker's total offense level was thus 22. The base offense level for the explosives charge was also 18. *Id.* § 2K1.6(a)(1). Together, the two charges gave a combined offense level of 24, *id.* § 3D1.4, and the parties stipulated Baker should receive a 2 point reduction for acceptance of responsibility, for a final offense level of 22. Baker's criminal history category was III. The Guidelines provide for a sentencing range of fifty-one to sixty-three months for a criminal history category of III and an offense level of 22. *Id.* Ch. 5, Part A.

The district court found two aggravating factors, however, and departed from the Guidelines, imposing a seventy month sentence. The district court found that Baker's possession of dynamite was an aggravating factor because the dynamite "could have been even potentially more dangerous than the brandishing of the firearms since it could have been set off." The court also found that the Guidelines provisions on the explosives charge did not contain an "adjustment for the aggravating factors of abducting and robbing at gunpoint." Accordingly, the district court departed upwards three levels and imposed a sentence at the bottom of the new range of seventy to eighty-seven months.

## II.

■ We review the district court's decision to depart from the Guidelines in a three step process. In the first step we determine whether the circumstances justify a departure, which we determine de novo. In the second step, we ascertain whether the circumstances given by the district court as grounds for departure actually exist, which we review under the clearly erroneous standard. In the third step, we determine whether the degree of departure is "reasonable." *See United States v. White,* 893 F.2d 276, 277–79 (10th Cir.1990).

### 1.

■ In the first step, we determine whether the circumstances justify a departure. A departure is justified if it falls outside the "heartland" or "set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch. 1, Part A, Introduction 4(a) p.s.; *see also* 18 U.S.C. § 3553(b). Baker contends that the possession and display of dynamite cannot be grounds for departure because such conduct is comprehended within the "specific offense characteristics" of Guidelines section 2B3.1, and hence is not a proper ground for departure. We disagree.

Guidelines section 2B3.1(b)(2) provides:

(A) If a firearm was discharged increase by 5 levels; (B) if a firearm or a dangerous weapon was otherwise used, increase by 4 levels; (C) if a firearm or other dangerous weapon was brandished, displayed or possessed, increase by 3 levels.

The commentary to Guidelines section 1B1.1 defines a "dangerous weapon" as follows:

"Dangerous weapon" means an instrument capable of inflicting death or serious bodily injury.

U.S.S.G. § 1B1.1, comment. (n. 1(d)). The Guidelines also state, however, that where "a weapon or dangerous instrumentality was used or possessed in the commission of the offense," the court may depart from the Guidelines, and that "[t]he extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others." *Id.* § 5K2.6, p.s.

In our view the district court was justified in departing from the Guidelines' sentencing range due to Baker's use of dynamite in the robbery and his abduction at gunpoint of the supply store owner. We find that the Sentencing Commission's definition of "dangerous weapon" was not intended to comprehend explosives. We reach our conclusion for three reasons. First, the definition of "dangerous weapon" speaks only of injury to a person, not persons or property. *See id.* § 1B1.1, comment. (n. 1(d)). This suggests that the weapon contemplated by the definition is one capable of direction at a specific individual or object, such as a firearm, knife, club, fist, etc. Dynamite or other explosives are of a different order because by their nature they will tend to injury both persons and property, rather than just a specific person.

Second, the language of Guidelines section 2B3.1, which assesses a five point increase if a firearm is discharged, a four point increase if a firearm or dangerous weapon is otherwise used, and a three point increase if a firearm or dangerous weapon is displayed or possessed, indicates that the Commission believed the discharge of a firearm to be the most serious aggravating

factor. Dangerous weapons, however used, can be assessed at most a four point increase in offense level. Given the greater destructive nature of dynamite and explosives relative to a firearm, the language and structure of section 2B3.1 shows that the Sentencing Commission did not contemplate the use of such explosive devices when it devised the "dangerous weapon" aggravation provisions.

Third, we find that the uncontrollable nature of many explosives, which can result in indiscriminate destruction and slaughter, is sufficient in itself to justify departure. As the policy statement in Guidelines section 5K2.6 states, "the court may increase the sentence above the authorized guideline range ... depend[ing] on the dangerousness of the weapon, ... and the extent to which its use endangered others." It is indisputable that dynamite and other explosive devices are extremely dangerous when used as a weapon and that their use can lead to a substantial endangerment of others, including bystanders and people in adjacent, and possibly even remote, areas of the structure. The district court did not err in finding Baker's possession and use of dynamite to be an aggravating factor that was not considered by the Sentencing Commission.

■ The district court also cited, as grounds for departure, the fact that Baker abducted the supply store owner at gunpoint in order to compel him to surrender the dynamite. We agree with the district court that this conduct justifies departure. The explosives provision, *id.* § 2K1.6, does not include any aggravating factors for use of a firearm or abduction. Analogy to the robbery provision, which provides for a three point increase for display of a firearm and a possible four point increase for kidnapping, suggests the propriety of departure for such conduct. *See id.* 2B3.1(b). The fact that the Sentencing Commission did not expressly provide for such aggravating factor does not require a contrary result. *See id.* 5K2.0, p.s. ("[A] factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing. For example, the use of a weapon has been listed as a specific offense characteristic under many guidelines, but not under immigration violations. Therefore, if a weapon is a relevant factor to sentencing for an immigration violation, the court may depart for this reason.").

### 2.

Turning to the second step of the *White* analysis, there is no dispute that Baker did abduct the supply store owner at gunpoint in order to obtain dynamite, and that he did use both firearms and dynamite in robbing the credit union.

### 3.

■ The third step of the *White* analysis requires us to review the reasonableness of the district court's departure. The district court departed upwards seven months over the Guidelines' sentencing range of fifty-one to sixty-three months. We note that even though the district court stated it was departing upward three levels on the offense table, the sentence imposed, seventy months, falls within the upper limits of the sentencing range for the next most severe offense level. Accordingly, we find that the district court's degree of departure was reasonable.

### III.

We hold that the use of explosives for intimidation during a bank robbery is an aggravating factor not considered by the Sentencing Commission in Guidelines section 2B3.1. We also hold that abduction at gunpoint is an aggravating factor not considered by the Commission in Guidelines section 2K1.6. The district court therefore did not err in departing on the basis of those factors.

AFFIRMED.