**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Wesley Lloyd NAKAGAWA, Defendant–Appellant.**

**No. 89–10564.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1990.

Memorandum Oct. 16, 1990.

Opinion Jan. 30, 1991.

---

Ignacio R. Garcia, Honolulu, Hawaii, for defendant-appellant.

John F. Peyton, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before GOODWIN, Chief Judge, CANBY and RYMER, Circuit Judges.

## ORDER

The memorandum filed on October 16, 1990, 916 F.2d 716, is redesignated as an authored opinion by Judge Canby.

## OPINION

CANBY, Circuit Judge:

Wesley Lloyd Nakagawa appeals from a judgment of the district court sentencing him to fourteen years in prison for drug, firearm and tax offenses. He alleges various errors under the federal sentencing guidelines. We affirm the judgment.

### I

Federal and state agents executed a search warrant at Nakagawa's home in February 1989. They located Nakagawa in one of the bedrooms with 8 grams of methamphetamine and a loaded .25 caliber semiautomatic handgun; elsewhere in the house, they discovered financial records and 17 additional firearms, including two that were fully automatic.

In June 1989, Nakagawa pled guilty to all three counts in a government information: (I) possession of, with intent to distribute, less than 10 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); (II) possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); (III) failure to file a federal income tax return, in violation of 26 U.S.C. § 7203. The plea agreement also provided that Nakagawa would cooperate with the government and that "[in accordance with U.S.S.G. § 1B1.8,] any incriminating information provided by the defendant pursuant to this agreement, which is not available from any other source, may not be used to calculate the Guideline range applicable to the defendant." Memorandum of Plea Agreement, June 1, 1989.

At sentencing, the district court found, in part on the basis of statements made by Nakagawa, that Nakagawa had possessed 1191 grams of methamphetamine; accordingly, he received an offense level of 26 for Count I. *See* U.S.S.G. § 2D1.1(a)(3).[1] The court then assigned Nakagawa an offense level of 12 for Count III. A "multiple count adjustment" resulted in a combined offense level of 26 for Counts I and III. *See* U.S.S.G. § 3D1.4. Because he had no prior record, Nakagawa qualified for the lowest criminal history category. The combination of these data yielded a recommended sentence of 63 to 78 months. The court determined, however, that an upward departure was appropriate because of the number and dangerousness of the weapons found in Nakagawa's home, and imposed a sentence of 108 months. Count II carried a mandatory consecutive sentence of five years. *See* 18 U.S.C. § 924(c); U.S.S.G. § 2K2.4. Nakagawa's final sentence, therefore, was 14 years.

### II

■ Nakagawa challenges his sentence on the ground that the district court erred (A) in calculating his offense level, and (B) by departing from the guidelines recommendation. His contentions raise issues relating to the interpretation and application of the guidelines, and the constitutionality of his sentence. We review all of these matters *de novo*. *See, respectively,*

---

1. The unadjusted offense level was 28. The court deducted 2 points for acceptance of responsibility, *see* U.S.S.G. § 3E1.1. The court declined to apply the 2–point enhancement for carrying a firearm during commission of a drug offense, *see* U.S.S.G. § 2D1.1(b)(1), because Nakagawa's possession of a firearm was the substance of Count II, *see* U.S.S.G. § 2K2.4, comment. (n.2 and backg'd).

*United States v. Anderson,* 895 F.2d 641, 644 (9th Cir.1990); *United States v. Restrepo,* 884 F.2d 1294, 1295 (9th Cir.1989); *United States v. Wright,* 891 F.2d 209, 210–11 (9th Cir.1989). We affirm.

### A. *Determination of Offense Level*

#### 1. Use of Real Offense Information

 Nakagawa contends that the district court should have calculated his offense level solely on the basis of the amount of methamphetamine charged in the information, and erred by considering the amount actually involved in the offense. This objection lacks merit. The guidelines explained to the court that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct ... as the count of conviction." U.S.S.G. § 1B1.3 comment. (backg'd). Thus, the court did not err by considering the actual amount of methamphetamine rather than simply the charged amount. *See United States v. Turner,* 898 F.2d 705, 711 (9th Cir.) *cert. denied,* — U.S. —, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990).

#### 2. Use of Statments Made Pursuant to February Agreement

 Nakagawa asserts that, shortly after his arrest, he offered to supply information to the authorities under a verbal agreement that his counsel memorialized in a letter to the prosecutors dated February 23, 1989. The letter states that the agreement included a provision that Nakagawa's statements would not "be used against him either as evidence or cross-examination if there is no plea agreement finalized and a trial is necessary." Although Nakagawa has included the letter in the excerpts of record, it does not appear that the letter was ever made a part of the record in the district court. The prosecution does not dispute its authenticity.

On the basis of the letter, Nakagawa argues that the court erred by using, for the purpose of calculating his offense level, information that he provided to the government under the agreement. He refers to the guidelines:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and the government agrees that self-incriminating information so provided will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

U.S.S.G. § 1B1.8(a). *See also United States v. Shorteeth,* 887 F.2d 253, 256–57 (10th Cir.1989) (§ 1B1.8(a)'s prohibition applies even though cooperation agreement in question expressly provided that it did not encompass sentencing).

There are several reasons why we cannot entertain this contention of Nakagawa's. First is the fact that the letter of February 23, 1989 is not actually a part of the district court record. That might not be a fatal deficiency, in the light of the government's seeming acceptance of the letter's authenticity, if the letter or the agreement it memorialized had ever been brought to the attention of the district court. We have searched the record in vain for any hint of a reference to the letter or the agreement.

Ordinarily, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). We have permitted discretionary exceptions to this rule when "the question is a purely legal one and the record has been fully developed prior to appeal." *Quinn v. Robinson,* 783 F.2d 776, 814 (9th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986). In this case the record is far from developed. Not only was the letter of February 23 never placed in the record; it refers to a verbal agreement that is also not mentioned in the record. We have no way of knowing the full terms of the verbal agreement. Even more important, we have no way of determining what, if any, information that was used at sentencing was derived from information supplied by Nakagawa pursuant to the February cooperation agreement.

Nakagawa also relies in part on his later plea agreement, which provided that "incriminating information provided by the defendant pursuant to this agreement, which is not available from any other source, may not be used to calculate the Guideline range applicable to the defendant." While the plea agreement is at least part of the record, the quoted portion of it was not relied upon by Nakagawa at sentencing. Nakagawa urged that his cooperation should be taken into account for purposes of assessing his acceptance of responsibility, but he never suggested that any information was being used by the government in violation of the plea agreement or of Guideline § 1B1.8. As in the case of his alleged February agreement, the record affords no basis for determining that any information that was used at sentencing was produced by Nakagawa pursuant to the cooperation clause of the plea agreement. Indeed, if the record suggests anything, it is that no such information was used.

Accordingly, we are unable to entertain Nakagawa's contention based on his plea agreement for the same reason that we cannot entertain his contention based on the February agreement: there is insufficient development of the factual record to permit decision. *See Quinn,* 783 F.2d at 814. To the extent that Nakagawa retains any right to pursue these contentions, a point on which we express no opinion, he will have to raise them by collateral review or some other procedure permitting further development of a factual record.

### B. *Determination To Depart*

#### 1. Use of Real Offense Information

■ Nakagawa objects to the district court's use of information about his cache of weapons as a basis of departure because this information did not appear in the charges to which he pled guilty and of which he was convicted. However, the guidelines did not limit the court to elements of the charged offense as possible grounds for departure. The guidelines combine aspects of both "real offense" and "charge offense" systems. *See* U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(a). In its general instructions, the Sentencing Commission stated that the district court, in determining whether to depart, "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. Further, the Commission's explicit approval of departures based upon the inadequacy of a defendant's criminal history score clearly indicates that it did not intend the limitation Nakagawa urges, for aspects of one's criminal background do not normally appear in the charges on which one is convicted. *See* U.S.S.G. § 4A1.3.[2] Accordingly, we hold that the district court did not err by founding its departure upon aspects of Nakagawa's offense that were not specified in the information to which he pled guilty.[3]

#### 2. Number and Dangerousness of Weapons

■ Nakagawa contends that his possessing a weapon during commission of the drug offense independently contributed to his sentence through Count II, and therefore was not a permissible ground for departure. We disagree. As a general matter, the guidelines permit departures for the use or possession of a weapon in the commission of an offense. *See* U.S.S.G. § 5K2.6, p.s. Moreover, they permit such a departure even if "the applicable guidelines, specific offense characteristics, and adjustments ... take [weapon possession]

---

**2.** Moreover, conduct that is the ground of a departure under this provision need not have been the basis of even a *prior* conviction. *See id.* at (e).

**3.** Consistent with the view we have described are several cases in this and other circuits that have permitted district courts to depart on the basis of offense elements that were not charged.

*See United States v. Ramirez–DeRosas,* 873 F.2d 1177, 1178–79 (9th Cir.1989) (high speed chase); *United States v. Diaz–Villafane,* 874 F.2d 43, 50 (1st Cir.) (use of children to deliver narcotics), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. Correa–Vargas,* 860 F.2d 35, 39 (2d Cir.1988) (large quantity of drugs).

into consideration" so long as that factor "is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction." *Id.* We concur with the district court's assessment that Nakagawa's arsenal of 18 firearms, some fully automatic, elevated the factor of weapon possession in this case to an extraordinary level, and rendered it a suitable ground on which to depart from the guidelines recommendation.

### 3. Double Jeopardy

■ Finally, Nakagawa asserts that the sentence he received violated his constitutional protection against double jeopardy because it punishes him twice—once through the mandatory sentence on Count II, and once through the upward departure—for the single act of possessing a weapon during the commission of another offense. This argument fails, however, for two reasons. First, the basis of the sentence on Count II was different from the basis of the departure. The former was Nakagawa's possession of a single, identified firearm; the latter was the number and dangerousness of 17 other firearms in his possession.

Second, " '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended[.]' " *United States v. Hunter,* 887 F.2d 1001, 1003 (9th Cir.1989) (quoting *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983)), *cert. denied,* — U.S. ——, 110 S.Ct. 1159, 107 L.Ed.2d 1062 (1990). The language of § 924(c) shows that Congress did not intend for that statute to provide the only source of increased punishment for possessing a weapon during the commission of a crime.[4] Thus, the sentence did not violate the double jeopardy clause.

The judgment of the district court is AFFIRMED.

---

**4.** The statute reads as follows:

Whoever, during and in relation to any crime of violence or drug trafficking crime (*including a crime of violence or drug trafficking crime which provides for an enhanced punish-* *ment if committed by the use of a deadly or dangerous weapon or device* ) ... uses or carries a firearm, shall *in addition to* the punishment provided for such crime....
18 U.S.C. § 924(c)(1) (emphasis added).