[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 95-6548 and 95-6602
_____

D.C. Docket Nos. CR 94-91 and CR 95-102

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUY BROCKWELL BOURNE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**December 15, 1997)**

Before BIRCH, Circuit Judge, FAY, Senior Circuit Judge, and COHILL*, Senior District Judge.

_____

*Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

PER CURIAM

Appellant Guy Brockwell Bourne pled guilty to three counts of bank robbery . He appeals the computation of his sentence and the amount of restitution he was ordered to pay one of the banks. We have jurisdiction over the appeal of a sentence under 28 U.S.C. § 1291. Because we find that the district court erroneously employed double counting in calculating Bourne's base offense level, we will vacate the judgment of sentence and remand for resentencing.

## I. BACKGROUND

The consolidated sentencing was for three robberies committed by Bourne in the Spring of 1994. The first bank robbery occurred in Mobile, Alabama on April 11, 1994 at the First Alabama Bank where Bourne allegedly stole $11,527.00. From his next robbery at Horizon Bank in Pensacola, Florida on May 5, 1994 Bourne garnered $1,600.00. The trilogy of bank robberies was completed on May 19, 1994 at the Compass Bank, also in Mobile, Alabama, where Bourne stole $604.00. His modus operandi was similar in each robbery. Bourne would ask a bank teller for coin wrappers. As the teller was getting the wrappers Bourne would produce a demand note. In the Pensacola bank robbery Bourne also displayed a revolver to the teller.

Bourne first pled guilty to the two-count indictment for the two bank robberies which were committed in Mobile, Alabama. Pursuant to a plea agreement with the government under Rule 20 of the Federal Rules of Criminal Procedure, the Pensacola case was later transferred to the U.S. District Court for the Southern District of Alabama for the guilty plea and sentencing. As Bourne was already in prison in Alabama for yet another bank robbery, this consolidated sentencing allowed Bourne to avoid being sentenced as a career offender.

At the sentence hearing on June 24, 1995 the district court engaged in a dialogue with counsel for both sides concerning application of the presentence report's adjustments based on the use of a firearm in the Pensacola bank robbery. The base offense level included a three-level increase for the use of a firearm. After hearing argument, the court determined that the sentencing range would be

between 70 to 87 months.

The guideline calculation had a combined adjusted offense level for the three robberies. The presentence report provided for only a two-level adjustment for acceptance of responsibility. Bourne argued that he should be given a three-level downward adjustment for acceptance of responsibility for the Pensacola offense, rather than two levels, and that this three-level adjustment should apply to the entire consolidated sentencing. The district court found that Bourne was not entitled to the additional one-level reduction because a local rule of the Southern District of Alabama requires a defendant to file notice of intent to plead guilty no later than the pretrial conference. Bourne argued that his notice of intent was timely only as to the Pensacola charge.

Bourne also disputed the validity of the district court's finding that he used a death threat in his written note in the Pensacola robbery. From the record, it appears that this note was never actually put into evidence. Rather, an FBI agent stated that the bank teller had told him that she had received a written note from Bourne stating "This is a hold up, I will kill you." The agent had never seen the note. Bourne testified that he had used the same note in the Pensacola robbery as he had in the previous robbery of First Alabama Bank. This note was entered into evidence and did not have an explicit threat of death. The district court determined that the FBI agent's testimony was more credible than the direct testimony of Bourne. The finding of a death threat increased his guideline computation by two levels with a commensurate increase in the range to 87 to 108 months.

Bourne objected to the amount of restitution ordered for the First Alabama Bank robbery stating "that is not how much money I received, it was eighty-eight hundred dollars." [R.2-1-70]. The government's special agent testified that bank auditors from First Alabama had determined that the amount of loss from the robbery was $11,527. On cross examination the agent admitted that he had not brought the audit with him, that he had not verified the information in the audit, and that he could not state with certainty how the audit was performed. Bourne took the stand . He admitted that he had been using marijuana during the robbery, but claimed that his marijuana use had not affected his

memory because "he ran a corporation with five hundred employee while I was using marijuana." [R.2-1-70]. The district court accepted the agent's testimony.

Bourne was sentenced to 108 months on each count to run concurrently with the other robbery sentences, a supervised release term of five years, a $50 special assessment and restitution.

## II.  STANDARD OF REVIEW

Our standard of review of a district court's application of the Sentencing Guidelines is de novo. United States v. Diaz, 26 F.3d 1533, 1544 (11th Cir. 1994), cert. denied, 513 U.S. 1134, 115 S.Ct. 952, 130 L.Ed.2d 895 (1995).  We review the district court's factual findings as to the amount of restitution under the clearly erroneous standard.  United States v. Asseff, 917 F.2d 502, 505 (11th Cir. 1990).


## III.  DISCUSSION

a.    Acceptance of responsibility

Under section 3E1.1 of the Sentencing Guidelines a defendant is allowed a two-level decrease if he or she accepts responsibility for the offense.  U.S.S.G. § 3E1.1(a).  Another one-level reduction is permitted if, inter alia, his entry of a guilty plea is timely.  U.S.S.G. § 3E1.1(b)(2).  The district court allowed a two-level reduction for Bourne's acceptance of responsibility , but found that since his guilty plea in the Mobile bank robberies was not timely, a further reduction was not warranted.  Bourne contends that his timely plea in the Pensacola bank robbery should merit an additional one-level adjustment.

Under the Sentencing Guidelines, when there are multiple counts of conviction, adjustment for acceptance of responsibility is applied after all the offenses have been aggregated pursuant to section  1B1.1.  To be entitled to an adjustment a defendant must accept responsibility for each crime to which he is being sentenced. United States v. Ginn, 87 F.3d 367, 370 (9th Cir. 1996); United States v. Kleinebreil, 966 F.2d 945, 951-53 (5th Cir. 1992);  United States v, McDowell, 888 F.2d 285, 293 (3d Cir. 1989).  The rationale is quite simple: a defendant would receive "a benefit on his offense for

both robberies even though he accepted responsibility for only one robbery." Ginn, 87 F.3d at 371. Bourne does not dispute that his plea in the Mobile cases was untimely. The district court was correct in not applying another one-level reduction for acceptance of responsibility for timeliness.

b.      Double counting

Under U.S.S.G. § 2B3.1, the base offense level for robbery is 20. Under the "Special Offense Characteristics", there is a two-level enhancement for involvement of a financial institution and a graduated enhancement beginning with an express threat of death and ending with discharging a firearm. In calculating the base offense level for the Pensacola bank robbery the district court applied a three-level increase for brandishing a dangerous weapon and then added a two-level increase for a threat of death in Bourne's note to the bank teller. Bourne argues that this enhancement amounts to double-counting in violation of the Guidelines provisions.

This court recently addressed double counting under section 2B3.1(b)(2) and found that the "use[] of a firearm or dangerous weapon, should not include an independent increase, whether by departure or otherwise, for an express threat of death." United States v. LNU, 16 F.3d 1168, 1171 (11th Cir. 1994), modified, United States v. Omar, 24 F.3d 1168 (11th Cir. 1994). The Government concedes that LNU controls and has waived its argument that Bourne failed to preserve this issue on appeal. Since a threat of death is implicit when a dangerous weapon is displayed, the district court erred when it added two levels for an express threat of death. We note that Bourne's concern that the district court improperly admitted evidence concerning the express death threat contained in the note is moot.

c.      Restitution

The burden of proof for establishing restitution is upon the government by a preponderance of the evidence. 18 U.S.C. § 3664(d). The court, in determining the appropriate amount of restitution, may consider hearsay evidence that bears "minimal indicia of reliability" so long as the defendant is given an opportunity to refute that evidence. United States v. Hairston, 888 F.2d 1349, 1353 (11th

Cir.1989). To show that the evidence lacks "minimal indicia of reliability" a defendant must establish "(1) that the challenged evidence is materially false, and (2) that it actually served as a basis for the sentence." *Id.* (Quoting United States v. Reme, 738 F.2d 1156, 1167 (11th Cir. 1984)).

We cannot find that the district court was clearly erroneous in accepting the testimony of the special agent as to the amount of loss from First Alabama Bank. Bourne has not shown that the hearsay upon which the district court relied is materially false or unreliable. The special agent based his testimony on his recollection of the bank auditor's report prepared on the day of the robbery. It is the type of evidence routinely relied upon by the FBI in determining amounts stolen from banks. However, since this matter is to be remanded for sentencing, we suggest that the district court revisit the amount of restitution. It should be a simple matter for the special agent to obtain the auditor's report or for the bank auditor to testify . This should then serve to determine the exact amount of restitution to be ordered.

## IV. CONCLUSION

The judgment of sentencing is REVERSED and the case is REMANDED for proceedings consistent with this opinion.