**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4896

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM SHAWN ELLIOT,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville. Terrence W. Boyle, Chief District Judge. (4:16-cr-00041-BO-1)

Submitted: August 20, 2019                     Decided: December 27, 2019

Before GREGORY, Chief Judge, and DIAZ and RICHARDSON, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

Katryna Lyn Spearman, Murdoch Walker, II, LOWTHER WALKER, LLC, Atlanta, Georgia, for Appellant. Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Banumathi Rangarajan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Shawn Elliot appeals the 240-month sentence imposed following his conviction by a jury of making a false statement to influence a bank loan, in violation of 18 U.S.C. § 1014, and his subsequent guilty plea to arson, in violation of 18 U.S.C. § 844(i). On appeal, Elliot argues that his sentence, which represents a 143-month upward departure from the applicable guidelines range, is procedurally and substantively unreasonable. We agree that his sentence is procedurally unreasonable because the district court failed to articulate an aggravating circumstance justifying its upward departure under U.S. Sentencing Guidelines ("U.S.S.G.") § 5K2.6. Accordingly, we vacate the sentence and remand for resentencing.

I.

The offenses giving rise to Elliot's 240-month sentence have their genesis in a scheme he concocted to get out of debts associated with his construction of two properties in Jacksonville, North Carolina. Elliot ran out of money midway through the construction and began looking for a loan. In December 2010, after first seeking a loan from First Federal Savings and Loan Association of Charleston with the aid of a falsified tax return (the basis of his conviction for violating 18 U.S.C. § 1014), Elliot obtained a $100,000 loan from Navy Federal Credit Union, but thereafter failed to make payments to his contractor and private investor. Separately, in December 2011, Elliot obtained a $495,000 insurance policy from The Hartford for a multi-unit building in Kinston, North Carolina, which he was using as a rental property. The policy did not cover intentional damage.

2

In May 2012, Elliot's contractor and private investor filed suit against Elliot to recoup their debts. Faced with mounting financial problems, Elliot conspired with his brother to set fire to the Kinston property and collect the insurance proceeds. He did so in the wee hours of July 14, 2012, by means of Molotov cocktails and an accelerant. In an attempt to conceal the crime, he also set fire to three adjacent buildings (which he didn't own). The fires completely destroyed the Kinston property, causing roughly $1,700 in personal property loss to a tenant who was home at the time. The blaze also destroyed one of the adjacent buildings that was occupied by a small law firm, which reported significant insured and uninsured losses.

Two days later, Elliot filed a claim on his insurance policy. Law enforcement determined that the fires were suspicious and turned their attention to Elliot as a suspect. Upon questioning, Elliot admitted to having conspired with his brother to start them.

Elliot was charged with nine total counts of the following offenses: making a false statement to influence a bank loan, in violation of 18 U.S.C. § 1014; wire fraud, in violation of 18 U.S.C. § 1343; conspiracy to commit arson, in violation of 18 U.S.C. § 844(n); three counts of arson, in violation of 18 U.S.C. § 844(i); two counts of using or carrying a destructive device in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); and aggravated arson, in violation of 18 U.S.C. § 844(h).

Elliot testified at his July 2018 jury trial, denying that he and his brother had started the fires and that he had used a falsified tax return to seek a loan from First Federal. The jury convicted Elliot of making a false statement to influence a bank loan, but couldn't reach a verdict on the other eight counts, resulting in a mistrial. (The jury also acquitted

3

Elliot's brother of all charges.) To avoid a retrial, Elliot entered into a plea agreement on one count of simple arson in exchange for a dismissal of the remaining counts.

Following the plea agreement, the revised presentence report recommended an adjusted offense level of 19 for the false statement conviction (including an enhancement for obstruction of justice under U.S.S.G. § 3C1.1) and an adjusted offense level of 26 for the arson conviction (including an enhancement under U.S.S.G. § 2K1.4(a)(1)(A) because Elliot knowingly created a substantial risk of death or serious bodily injury to another person, plus another enhancement under U.S.S.G. § 3C1.1 for obstruction of justice), making a combined offense level of 27. Accounting for Elliot's criminal history category produced a guidelines range of 70 to 87 months' imprisonment.

The government objected to the presentence report, moving for an additional enhancement under U.S.S.G. § 3B1.1(c) on account of Elliot's aggravating role in the offense in that he had recruited his brother to assist him. The government also moved for upward departures under five provisions of the guidelines on the ground that Elliot's advisory range was significantly "out of touch with the reality of the offense conduct": (1) under U.S.S.G. § 5K2.5 to account for to the extent of property loss that Elliot caused, (2) under U.S.S.G. § 5K2.6 to account for the inherent danger to life and property caused by Elliot's use of Molotov cocktails, (3) under U.S.S.G. § 5K2.7 to account for Elliot's justice-obstructing perjury, (4) under U.S.S.G. § 5K2.21 to account for Elliot's dismissed and uncharged conduct, and (5) under U.S.S.G. § 5K2.9 to account for the fact that Elliot committed arson in order to facilitate the additional offense of wire fraud. Based on these collective grounds, the government argued for a sentence of 240 months.

4

At the sentencing proceeding, the district court granted the government's request in full. It first imposed an aggravating role enhancement under U.S.S.G. § 3B1.1(c), making a revised offense level of 28 with a guidelines range of 78 to 97 months' imprisonment. It then departed upwardly under all five provisions that the government had identified, relying on the government's arguments "as true, valid, and appropriate in this case." J.A. 95. The court then sentenced Elliot to 240 months' imprisonment, 143 months more than the final upper guidelines figure of 97 months. Elliot timely appealed.

II.

"We 'review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard.'" *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). This review encompasses both procedural and substantive reasonableness. *United States v. Howard*, 773 F.3d 519, 528 (4th Cir. 2014). We first consider whether the district court committed significant procedural error. *Gall*, 552 U.S. at 51. If we find none, we then evaluate for substantive reasonableness. *Id.* In evaluating the district court's application of the guidelines, we review factual findings for clear error and questions of law de novo. *United States v. Hawley*, 919 F.3d 252, 255 (4th Cir. 2019).

Elliot contends that all five provisions under which the district court upwardly departed were both improperly supported and significantly overemphasized. With regard to procedural reasonableness, he argues that three of the upward departure grounds—U.S.S.G. §§ 5K2.5, 5K2.6, 5K2.9—were premised on factors already accounted for by his

5

guidelines range. He also asserts that the other two grounds—U.S.S.G. §§ 5K2.7, and 5K2.21—were premised on circumstances created by the government, for which he should not have been penalized. The government counters that the district court properly applied these provisions to the circumstances of Elliot's case and acted within its discretion in departing significantly upward.

We conclude that the district court failed to identify an aggravating circumstance not adequately accounted for by Elliot's guidelines range in departing upwardly under U.S.S.G. § 5K2.6. "Pursuant to U.S.S.G. § 5K2.0(a)(1), the sentencing court may depart upwardly from the applicable offense level" under chapter five of the guidelines if the departure is "based on facts 'of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that . . . should result in a sentence different from that described.'" *United States v. Grubbs*, 585 F.3d 793, 804 (4th Cir. 2009) (quoting 18 U.S.C. § 3553(b)(1)); *see also* U.S.S.G. § 5K2.0(a)(1)(A) ("The sentencing court may depart from the applicable guideline range if . . . the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance.").

In justifying the departure, the district court relied on the government's motion and its subsequent argument during the sentencing proceeding. The government, in turn, argued that departing upward was necessary to account for the inherent danger that Molotov cocktails pose to life and property. But we find that U.S.S.G. § 2K1.4, the provision under which Elliot's base offense level with respect to his conviction for arson was calculated, adequately accounts for the inherent danger of Molotov cocktails. It does

6

so via Elliot's statute of conviction, which defines arson as the act of maliciously damaging or destroying any building, vehicle, or other real or personal property "by means of fire or an explosive." 18 U.S.C. § 844(i). This statute further defines "explosive" to include any "explosive or incendiary device within the meaning of [18 U.S.C. § 232(5)]," *id.* § 844(j), which in turn defines "explosive" to mean "any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting along," *id.* § 232(5).

In other words, the term "explosive" as used in Elliot's statute of conviction for arson comprehends the use of Molotov cocktails. As a result, their inherent dangerousness isn't an aggravating circumstance warranting upward departure under § 5K2.6. *See United States v. Johnson*, 152 F.3d 553, 557 (6th Cir. 1998) (vacating sentence based on § 5K2.6 upward departure where the defendant committed arson by igniting a vehicle, which instrumentality was likewise comprehended by 18 U.S.C. § 844(i)); *but see United States v. Baker*, 914 F.2d 208, 210 (10th Cir. 1990) (affirming upward departure under § 5K2.6 on the ground that the term "dangerous weapon" as used in the defendant's statute of conviction didn't "comprehend" the explosives he used to commit robbery).

The government also fails to identify any other aggravating circumstance on appeal. The government first posits that an upward departure was warranted under U.S.S.G. § 5K2.6 because Elliot damaged multiple buildings, but this circumstance reflects the fact that Elliot was charged with multiple counts of arson, which were taken in account by the district court's upward departure under U.S.S.G. § 5K2.21 for dismissed and uncharged

7

conduct. The extent of Elliot's damage was also taken into account by the district court's upward departure under U.S.S.G. § 5.2K5 for aggravated property damage.

The government next posits that an upward departure was warranted under U.S.S.G. § 5K2.6 because Elliot's use of Molotov cocktails endangered an innocent tenant, but this circumstance, too, was accounted for by the district court's base offense level enhancement under U.S.S.G. § 2K1.4(a)(1)(A) for Elliot's knowing creation of a substantial risk of death or serious bodily injury to another. Finally, the government asserts that an upward departure was warranted under U.S.S.G. § 5K2.6 because of the number of Molotov cocktails that Elliot used, but fails to clarify how many he used beyond "multiple." But again, because Elliot was charged with multiple counts of arson, his use of multiple cocktails doesn't constitute an aggravating circumstance warranting further upward departure under U.S.S.G. §5K2.6.[*]

We next conclude that the district court's upward departure under U.S.S.G. § 5K2.6 wasn't harmless because the record doesn't indicate that the court would have imposed the

---

[*] We also have concerns that the district court's upward departure under U.S.S.G. § 5K2.7 wasn't premised on an aggravating circumstance because the apparent basis for this departure—Elliot's perjury on behalf of himself and his brother—was accounted for with respect to each conviction by the district court's two-level enhancements under U.S.S.G. § 3C1.1 for obstruction of justice. Because Elliot hasn't challenged this departure, however, we express no conclusion about its propriety. We simply note that, on remand, any departure under U.S.S.G. § 5K2.7 must also be based on an "aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." U.S.S.G. § 5K2.0(a)(1).

same sentence without it. In pronouncing the sentence, the district court relied on the government's motion for upward departure, stating that it had "incorporated by reference" the government's "presentation" and "accept[ed] it as being true, valid, and appropriate in this case." J.A. 95. The government's motion, in turn, requested a 240-month sentence on the collective basis of all five grounds for upward departure. Thus, because the district court's imposition of a 240-month sentence relied in part on its departure under U.S.S.G. § 5K2.6, we cannot conclude that the error had no impact on the district court's decision.

III.

For the foregoing reasons, we vacate Elliot's sentence and remand for resentencing. On remand, the district court is free to identify an aggravating circumstance not adequately accounted for by Elliot's guidelines range, or to vary under the 18 U.S.C. § 3553(a) factors as it finds appropriate, about which we express no opinion.

*VACATED AND REMANDED*